# AFFIDAVIT OF PROBABLE CAUSE
# IN SUPPORT OF A CRIMINAL COMPLAINT

I, JASON PARILLO, DO HEREBY DEPOSE AND SAY:

1.  I am a United States Postal Inspector, employed by the U.S. Postal Inspection Service (USPIS) since July of 2016, and currently assigned to Cleveland, Ohio, Field Office. I am a sworn Federal law enforcement officer empowered to investigate criminal activity involving or relating to the U.S. Postal Service (USPS) and/or U.S. Mail. I am currently assigned to the Prohibited Mail Narcotics team, which investigates the mailing of illegal narcotics, dangerous drugs, and their proceeds. I have received training in the detection and investigation of prohibited mailing offenses. Over the past three years, I have worked in conjunction with the Homeland Security Investigations (HSI) and the Border Enforcement Security Taskforce (BEST) on cases involving illegal narcotics mailed from foreign countries, as well as DEA on cases involving illegal narcotics mailed domestically through the U.S. mail.

2.  As a Postal Inspector, I have also conducted online investigations, analyzed pen register and telephone toll data, analyzed financial records, executed controlled deliveries of controlled substances, interviewed witnesses, drafted and executed search warrants, seized illegal drugs and other evidence of drug violations in physical and electronic sources, processed seized evidence, and debriefed persons arrested and convicted of drug trafficking offenses regarding their illegal activity.

3.  Through investigation and training, I have become familiar with the types and amounts of profits made by drug traffickers and the methods, language, and terms that are used to disguise their illegal activity. I know that persons engaged in drug trafficking require

expedient forms of communication to maintain an adequate and consistent supply of drugs from sources, and to effectively market those drugs to customers.

4. Your Affiant knows based on training and experiences those individuals who traffic in one controlled substances such as Cocaine often traffic and possesses other controlled substances and controlled substance analogues, particularly synthetic narcotics.

5. Furthermore, based on my training and experience that individuals who engage in unlawful activity on the internet (including the dark net) sometimes also use the expertise that they learn to engage in other criminal activity online.

6. This Affidavit is offered in support of a Criminal Complaint against Defendant WAYNE NORRIS with Title 21, United States Code, Section 841(a)(1), attempt to possess with intent to distribute a controlled substance; As further detailed below, your Affiant submits that there is probable cause to believe that from on or about March 7, 2020 to the present, WAYNE NORRIS, did knowingly and intentionally attempt to possess with the intent to distribute a mixture or substance containing a detectable amount of the cocaine.

7. The facts set forth below are based upon your Affiant's personal knowledge learned through the course of the investigation as well as information obtained from law enforcement and additional sources.

8. This Affidavit is being submitted for the limited purpose of informing the court of the evidence establishing probable cause for a violation of federal criminal law. Since this affidavit is for this limited purpose, your Affiant has not included each and every fact known concerning this investigation.

**FACTS AND CIRCUMSTANCES**
**REGARDING PROBABLE CAUSE**

9. On March 10, 2020, while profiling inbound parcels at the Cleveland P&DC originating from known source areas, I identified U.S. Postal Service Priority Mail parcel express bearing label no. EI273950280US addressed to Abby North, 142 E. Lake Ct., LaGrange, OH 44050, with a return address Jorge Ale, 142 E. Lake Ct, LaGrange, OH 44050. The subject parcel is further described as a small brown cardboard box weighing approximately 3 pounds. The subject parcel was mailed on March 9, 2020 from the, San Gabriel, CA Post Office 91778 and bore $64.50 in postage.

10. The subject parcel did not require a signature for delivery and was marked signature wavier. Signature Confirmation is not commonly used on drug parcels so the intended recipients do not have to have contact with the delivery employee and/or law enforcement should the parcel be seized.

11. I made inquiries with Clear, an electronic database that has proven reliable in previous investigations in determining the legitimacy of name, address, and phone number information, as well as a search of the business name for the subject parcel, and was unable to associate an Abby North with the delivery address of 142 E. Lake Ct, LaGrange, OH 44050. I also made inquiries pertaining to the return address and was unable to associate Jorge Ale, at the 142 E. Lake Ct, LaGrange, OH 44050 address ("the delivery address").

12. Your Affiant knows based on his training and experience that California has historically been a source area for mailed controlled substances into Northern Ohio.

13. I know from my training and experience, that individuals using the U. S. Mails for the purpose of transporting controlled substances will often place a fictitious address as a return address, different variations of their names, names of deceased individuals, businesses as

the return address, or no names at all on these parcels to conceal their true identities from law enforcement should the parcel be seized.

14. On March 10, 2020, the subject parcel was placed into a lineup containing several blank parcels which emanated no narcotics odors. Narcotic detection canine "Ciga", handled by Detective Michael Twombly of the Cuyahoga County Sheriff's Office was allowed to examine the lineup. According to Detective Twombly, Ciga gave a positive alert on the subject parcel. According to Detective Twombly, this positive alert meant Ciga detected the odor of an illegal drug emanating from the parcel.

15. Detective Twombly has been State Certified as a Narcotics Canine handler and he and narcotics canine Ciga have worked together since 2013. Detective Twombly and canine Ciga were both certified in October 2018 by the Ohio Peace Officers Training Academy (OPOTA) and the North American Police Work Dog Association (NAPWDA) in December 2019. Detective Twombly and canine Ciga have both completed 80 hours of a state-certified training program at Shallow Creek Kennels in Sharpsville, Pennsylvania under Certified Trainer John Brannon of the NAAPWDA, a nationally organized police work dog association that provides training for dogs and handlers. During this time, Ciga was trained and certified to alert to the presence of the odors from marijuana, cocaine, heroin, MDEA (methlyenedioxyethlamphamine), methamphetamine ("crystal meth"), and/or their derivatives. Detective Twombly has been trained how to handle a detector K9 and read his alerts.

16. On March 10, 2020, I obtained and executed a federal search warrant (1:20mj2056) on the subject parcel bearing label no. EI273950280US and its contents were photographed and inventoried. The contents contained approximately 2 pounds 5 ounces of a

white powdery substance that field tested positive for cocaine[1], concealed within a Tupperware container with coffee grounds.

17. On March 11, 2020, Postal Inspectors, the Department of Homeland Security Investigations and the Lorain County Drug Task Force planned and conducted a controlled delivery of the subject parcel bearing label no. EI273950280US. Prior to conducting the controlled delivery, Postal Inspectors removed the original contents of the subject parcel and replaced it with approximately 110 grams of the field tested positive cocaine as a representative sample along with a GPS unit that would allow law enforcement to track the movement of the subject parcel. The GPS and representative sample were placed inside of a make shift wooden block the approximate size of the original contents wrapped in black tape, and placed back into the subject parcel with a parcel beacon which would transmit a signal to law enforcement if the subject parcel had been opened. The representative sample and law enforcement equipment were placed back in the subject parcel. The inner part of the subject parcel and contents were sprayed with clue spray which would illuminate under black light if someone had touched the contents or inner part of the subject parcel in preparation for the controlled delivery.

18. On March 11, 2020, a Detective on the LCDTF obtained a state anticipatory search warrant through the Lorain County Court for the delivery address.

19. At approximately 12:00 PM, as law enforcement officers were driving on to Pheasant Run Dr., when they observed a Chrysler 300 four door sedan, silver in color with Ohio license plate HSJ1273 known by LCDTF to be driven by WAYNE NORRIS, driving east on Pheasant Run Dr. and continued to circle the side streets surrounding the delivery address.

20. At approximately 12:10 PM, a Postal Inspector acting in an undercover capacity

---

[1] Your affiant submitted the cocaine to the DEA Laboratory for testing, which has yet to be completed. However, the cocaine seized is consistent in packaging, color, smell, and consistency with a kilogram of cocaine.

as a U.S. Postal Service Supervisor, obtained a U.S. Postal Service vehicle and drove the subject parcel to the delivery address. The Postal Inspector approached the residence on foot and knocked on the door of the residence. The Postal Inspector received no answer at the door and placed the subject parcel in front of door to the right of garage. The Postal Inspector returned to the U.S. Postal Service vehicle and departed the area. The subject parcel was scanned delivered remotely by a Postal Inspector in Cleveland, OH.

21. Approximately 2 to 3 minutes after the Postal Inspector departed the area, law enforcement observed the Chrysler 300 arrive at the delivery address. At that time law enforcement observed by the GPS placed in the subject parcel move from the front of the delivery address and move inside the south end of the delivery address.

22. Approximately 5 minutes later law enforcement observed the Chrysler 300 drive away from the delivery address and depart the area. Law enforcement observed that the subject parcel remained within the residence according to the GPS device as well as the parcel beacon. Law enforcement officers on foot surveillance observed the subject parcel had been moved from in front of the door to the right of the garage and could not be seen near any of the outward facing doors of the residence.

23. At Approximately 2:45 PM, law enforcement observed the Chrysler 300 return to the delivery address and observed WAYNE NORRIS emerge from the rear door of the residence and reenter the residence. At the same time, law enforcement observed the subject parcel move several times via the GPS device.

24. At approximately 2:55 PM, law enforcement observed WAYNE NORRIS, return to the Chrysler 300 and drive to the corner of E. Lake Ct. At this time a Lorain County Sheriff in a marked Sheriff's vehicle performed a traffic stop of the Chrysler 300 and WAYNE

NORRIS was detained without incident.

25. At approximately 3:00 PM, law enforcement executed the state anticipatory search warrant for the delivery address. Law enforcement found the subject parcel on the floor inside the south side entrance of the residence. Law enforcement also found two large presses used in the manufacturing and pressing of narcotics inside the living room and laundry room of the residence.

26. WAYNE NORRIS was subsequently interviewed after executing the search warrant of the residence. Your affiant read WAYNE NORRIS his rights per Miranda and asked NORRIS if he understood his rights and if agreed to speak to law enforcement. NORRIS verbally acknowledge his rights and agreed to speak to law enforcement. NORRIS admitted to arriving at the residence around noon and moved the box inside the side door of the house. NORRIS stated he went to North Olmstead and returned to the residence attempting to contact a Drell Hall whom he explained was paying him $1000.00 for picking up the box. NORRIS stated he had met Hall at a halfway house after he was released from jail in January of 2019. NORRIS was asked if he knew what was in the box. NORRIS stated he didn't know exactly, "it could be heroin, cocaine, meth or weed." When asked how many parcels he was picking up for Hall, NORRIS stated just one. When asked how many times he has picked up boxes, NORRIS stated only once for Hall but had picked up others in the past with either heroin or cocaine in them for other people. NORRIS was asked if he had been in Cleveland today. NORRIS stated: North Olmstead. NORRIS was asked he was going to or knew about anything going to Archwood Ave in Cleveland. NORRIS stated he does go there and knew people over there. NORRIS signed a U.S. Postal Inspection Service Consent to Search form for his Chrysler 300 and the three phones found on his person at the time he was detained.

27. Upon initial examination of text messages and email browser history, Postal Inspectors found he had been inquiring on the subject parcel and its delivery status. There was also text messages indicating NORRIS had traveled to California during the weekend and spent $50,000.00 there.

28. For the foregoing reasons, your Affiant submits that there is probable cause that WAYNE NORRIS committed the following federal offense: Title 21, United States Code, Section 841(a)(1), possession with intent to distribute a controlled substance.

_____
JASON PARILLO
POSTAL INSPECTOR

Sworn to via telephone after submission by
reliable electronic means. Crim.Rules. 4.1; 41(d)
(3) this 12th Day of March, 2020.

_____
JOHATHAN D. GREENBERG
U. S. MAGISTRATE JUDGE