UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

FILED
FEB 19 2021
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
YOUNGSTOWN

| UNITED STATES OF AMERICA | Case No. 1:20-CR-00228 |
|---|---|
| v. | |
| WAYNE NORRIS<br>Defendant. | Benita Y. Pearson<br>JUDGE |

## MOTION FOR REDUCTION IN SENTENCE

Comes Now Defendant Wayne Norris Pro-Se, and moves this Honorable Court with his Motion For Reduction In Sentence pursuant to Title 18 U.S.C. Section 3582(c)(1)(A) and states as follows:

### Pro-se

The defendant is a Pro-se litigant and moves this Court to construe the defendant's submissons "Liberally and Interpret them to Raise the Strongest Arguments that they Suggest," see McPherson v. Coombe, 174 F.3d 276, 280 (2nd. cir. 1999).

### I. Timing of Motion.

On December 21, 2018, Former President Trump signed the FIRST STEP ACT ("FSA") into Law. Among other reforms, the FSA Provided the Sentencing Judge the ability to consider a defendant's motion for reduction in sentence under title 18 U.S.C. Section 3582(c)(1)(A)

Where "the defendant has fully exhausted all administrative rights to appeal a failure of the Burea of Federal Prisons ("BoP") to bring a motion on the defendant's behalf or the lapse of 30 days from the reciept of such a request by the warden of the defendant's facility, whichever is earlier [.]"

## II. Sentencing Reduction Authority.

The court has the discretion to reduce the term of imprisonment imposed in this case based on subsection 3582(c)(1)(A)(i) which states in relevant part that the court "may reduce term of imprisonment, after consideration of the factors set forth in Section 3553(a) to the extent they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction [.]"

Pursuant to the requirement of 28 U.S.C. Section 994(t), as authorized by 28 U.S.C. Section 994(a)(2)(c), the Sentencing Commission promulgated a policy statement that sets out of "extraordinary and compelling reasons" in USSG Section 1B1.13. The Policy Statement goes on to explain the "medical conditions of the defendant" that give rise to "extraordinary and compelling reasons", including:

(i) the defendant is (I) suffering from a serious physical or medical condition; (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the Aging Process that substantially deminishes the ability of the defendant to provide self-care within the enviroment of a correctional facility and from which he or she is not expected to recover. USSG Section 1B1.13, comment. n. 1(A) (Nov.1, 2016).

2.

The policy statement also lists a catchall provision, where "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with" the other reasons listed in the Policy Statement. Id. n.1(D).

As this court is aware, the Sentencing Guidelines are not binding. Instead, they offer guideance regarding what constitutes extraordinary and compelling circumstances. See U.S. v. Beck, 2019 WL 2716505, at 6 (M.D.N.C. June 28, 2019); U.S. v. Cantu, 2019 WL 2498923, at 5 (S.D. Tex June 17, 2019) (explaining that the Court decides what constitutes extraordinary for purposes of the "other reasons" section of Section 1B1.13, cmt. n.1(D)). Ultimately it is up to the courts, not the Sentencing Commission or the Director of the BOP to determine whether there is an 'extraordinary and compelling reason' to reduce a sentence. Id.

District courts have recognized that inmates with health issues that increase their risk of severe illness from COVID-19 present extraordinary and compelling reason for purpose of the statute. See U.S. v. Abdel-Aziz, 5:18-cr-163-BO, DE 83 (E.D.N.C. May 18, 2020) (granting relief to an inmate who had ailments including COPD, diabetes, obesity, and kidney disease).

3.

Infact, courts around the country have similarily granted compassionate release to defendant's who are vulnerable to Covid-19, often over the objection from the government. See e.g. U.S. v. Ullings, 2020 WL 2394096, at 4-5 (N.D. Ga. May 12, 2020) (finding 66 year old defendant with hypertension and obesity established extraordinary and compelling circumstances); see also U.S. v. Belanger, 2020 U.S. Dist. LEXIS 16198

MEDICAL CONDITIONS.

The defendant suffers from the following:
1). GRAVES DISEASE  2). SMOKER  3). OBESE

Medicines. 1). Methinazole (Thyroids) 2). Atenolol (Heart).

CDC.

The defendant's condition(s) make him vulnerable for severe complications which Covid-19, a respitory virus, running rampant through the BOP, can cause fatal outcome to the already pressing ailments suffered by defendant's graves disease.

The Centers for Disease Control and Prevention ("CDC") note that the risk of getting severely ill from Covid-19 increases with certain health conditions. CDC, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refval=http%3A%2F%2Fwww.CDC.gov%

4.

2FCoronavirus%2F2019-nCoV%2Fneed-extra-Precautions%2Fgroups-at-higher-risks.html (last visited Aug 2, 2020).

Moreover, the CDC concludes that having obesity defined as having a Body Mass Index ("BMI") above 30 also increases the risk of serious illness and complications from COVID-19. CDC, People with certain Medical Conditions, Obesity https://www.cdc.gov/coronavirus/2019-ncov/need-extra Precautions/People-with-medical-conditions.html obesity (last visited Aug 6, 2020).

The risk of contracting Covid-19 in tightly-confined spaces, especially Jails, is now exceedingly obvious. Basank v. Decker, 2020 WL 1481503, at 5 (S.D.N.Y. Mar 26, 2020).

Prison conditions accelerate the spread of Covid-19. One Public Health expert explained "[i]f you wanted to set up a situation that would promote rapid transmission of a respitory virus, you would say prison, its impossible to provide infection control." The Coronavirus comes to New York's Prisons, The New Yorker, March 24, 2020, https://www.NewYorker.com/news/news-desk/it-spreads-like-wildfire-covid-19-comes-to-new-york's-prisons.

Given the enclosed spaces conditions, inability to socially distance, and questionable hygeine, this is unsurprising. Making matters worse, Prisoners are more suceptible to the disease. Medical care is limited and inmates tend to have poorer health than the general Population. LAURA M. MARUSHAK et.al. (2015) Medical Problems of State and Federal Prisoners and Jail Inmates, 2011-12. NCJ 248491,

5.

Washington, D.C.: U.S. Department of Justice, Bureau of Justice Statistics, https://www.bjs.gov/content/pub/pdf/mpsfpji11z.pdf.

In recognition of the serious challenges presented by Covid-19 in the correctional setting, the CDC issued guidance specific to prison populations on march 23, 2020, https://www.cdc.gov/coronavirus/2019-ncov/community/correctional detention/guideance-correctional-detention.html (last visited June 29, 2020).

As a result, nationwide efforts to reduce prison populations are underway. For example, Former Attorney General Barr called on the BoP to release a significant number of prisoners at facilities that where materially affected by Covid-19, Memo from Attorney General to Director of BoP April 3, 2020, https://www.justice.gov/file/1266661/download.

In U.S. V. Melgarejo, 2020 U.S. Dist. LEXIS 83157 (may 12, 2020) (7th cir.) the court stated:

"Perhaps a prisoner could satisfy the extraordinary and compelling reason requirement by showing that his particular institution is facing a serious outbreak of Covid-19 infections, the institution is unable to successfully contain the outbreak and his Conditions places him at significant risk of complications."

Breadcrumbs trail of catastrophic Health Consequence.

The defendant believes that in the month of September 2020, the BoP began transfering into fci-beckley inmates from local jails and other prison facilities.

6.

1). Covid-19 Action Plan of BoP.

BoP Anti-Covid-19 Regimens designed to specifically curtail the spread of Covid-19 in BoP Prisons and facilities called for the halt of transfers of its Prisoners.
https://www.Bop.gov/resources/news/2020313-Covid-19.jsp.

2). History.

A). On July 16, 2020, fci-beckley recorded its First employee Asymptomatic Covid-19 virus case.
That employee was assigned to Oak-A-upper inmate Housing unit. (12-13 day lockdown of Oak-A-upper).

B). On October 2020, fci beckley recorded its First Prisoner case of Covid-19 virus infection.
The cases of Prisoner Covid-19 infections were tracked to the newly transfered (into fci-beckley) Prisoners.
Predate the transfering into fci-beckley new Prisoners, to the months of March through somewhere in September 2020, no cases of Prisoners of Covid-19 infections existed.
(This is fci-beckley's 2nd Covid-19 health consequence).

C). In the same vein, On October 14, 2020, Oak-A-upper Inmate housing unit was placed on lockdown to quarantine.
A newly arrived transfered in Prisoner had come into contact with a known and recorded Positive Covid-19 infected Prisoner in fci-beckley's new arrival designated quarantined unit Pine-A-lower and erroneously released to Oak-A-upper.
(This is Oak-A-upper's 2nd lockdown and fci-beckley's 3rd health consequence).

7.

D). On November 9, 2020, fci-beckley recorded its **4th** Covid-19 health consequence. Both Staff and Prisoners Covid-19 infections recorded an Astronomical Single outbreak in Inmate Housing Unit Pine-A-upper. (which is incidently directly above and located in the same air ventilation system with Pine-A-lower — the designated new arrival quarantine inmate Housing Unit).

E). In the same vein, the very next day on November 10, 2020, fci-beckley was placed on total lockdown of **All** its Prisoners due to multiple outbreaks of covid-19 infections in various inmate housing units and staff. (this is fci-beckley's **5th** health consequence).

F). On December 22, 2020, fci-beckley recorded its **6th** Covid-19 health consequence. The Residential Drug Abuse Program ("RDAP") unit was placed on lockdown to quarantine due to new spikes of Covid-19 infections.

G). On December 23, 2020, Oak-A-upper recorded its **3rd** Covid-19 infection in its Prisoners, Cell #410. (The defendant lives in Oak-A-upper inmate Housing unit Cell #416. This is fci-beckley's **7th** health consequence due to Covid-19).

H). On January 4, 2021, fci-beckley recorded its **8th** covid-19 health consequence directly raleted and tracked to staff infections.

I). On January 7, 2021, Oak-A-upper inmate Housing unit recorded its **4th** covid-19 infection in Prisoners. These infection(s) required out of

8.

Prison Hospitalization. (This is fci-beckley's <u>9th</u> recorded health consequence due to covid-19).

Factors of Catastrophic Health Consequence:

1). While on past quarantine lockdowns, fci-beckley's Administrative management allowed and still continue to allow as of these writings selective inmates to avoid quarantine in response to covid-19 infections flare-ups. (See continuous infections by staff and prisoners who did not quarantine as recommended by CDC guidelines).

2). PPE provided for staff members at fci-beckley are not vigorously enforced or properly made use of especially when handling food being distributed in inmate housing unit(s). (See kitchen workers infected).

3). Face masks provided to prisoners exclude a reasonable measure of filtration or protection from Aerosol spread of covid-19 especially in these closely confined prison spaces and dirty air filters.

4). Asymptomatic prisoners (and possibly staff as well) no longer use their masks due to already being infected with covid-19.

5). There currently exists a straight forward denial to provide testing for covid-19 to prisoners, who have requested based upon infected prisoners in their housing units who they come into contact with.

6). Testing for covid-19 virus by a prisoner at fci-beckley is denied due to budgetary constraints.

9.

7). Prisoners who become infected delay in reporting their contraction of Covid-19 due to fear of being thrown into the Inmates Special Housing unit ("SHU") which is the designated Inmate Disciplinary Housing unit (a highly restricted Housing unit).

8). The undercounting of Positive Covid-19 virus infections in recovered Prisoners (self-care) who do not report their Covid-19 infections and later heal and become Asymptomatic with capabilities to continue the spread of the deadly virus especially in never seeking Prison medical assistance as is the current case in fci-beckley.

Contributing Sources.

KAREN TROITINO (President of the Miami Correctional officers union).

"The strain of the virus we got in the facility shows no fever"

"Most inmates complain of extreme low energy, a headache, can't get out of bed, Vomitting, diarehha"

"The virus has spread so effectively through Federal facilities because of inconsistent Protocols that are almost always reactive rather than Preventive - Prisoners were only getting tested if they had a fever - a testing threshhold that hobbled the early months of the U.S. Coronavirus response on the outside before it spread to the Prisons."
Troitino told the Post (Aug 30, 2020).

10.

Pertinent Information.

1). The defendant is <u>34</u> years of age.
2). Defendant has <u>5</u> children.
3). Defendant was convicted of the following:
   <u>Title 21: 841 (A), (B) (1) (B) Possession of a</u>
   <u>controlled Substance with intent to</u>
   <u>Distribute (cocaine)</u>.
4). Defendant was sentenced to 51 months. He has 31 months left to serve on his sentence.
5). The defendant has no Disciplinary Incident Reports attributed to him in his background.
6). The defendant has exhausted his Prison Appeal administrative Remedies. (See attached exhibit(s)).

3553 (a) Factors.

1). The defendant poses no danger to the safety of any named person.
2). The defendant has no violence Recorded as a Conviction currently or in his past.
3). There exists no guns in his current case of conviction.
4). The defendant is not a danger to the Community.

11.

Extraordinary and compelling reasons.

1). Recently, the defendant and his family experienced a terrible loss of a young Four (4) year old neice. (See attached exhibit(s) ⎯⎯⎯⎯⎯).

2). Most Recent, the defendant was advised that another close family member has stage ⎯⎯⎯ this close patriach of the family is his loving grandmother. (See attached exhibit(s) ⎯⎯⎯.

3). Currently, the defendant's Graves Disease has become active and caused him to suffer numbness of his hands all day, muscle spasms in his left arm that leave his muscle(s) aching in pain due to the spasms and frequency of spasms.
An Analysis by fci-beckley medical personell reveal that the defendant's ailments are a direct result of his Thyroids are so swollen that it's pushing back on the nerves in his neck which cause the current symptoms.

4). Fci-beckley has not provided the defendant adequate access to a specialist who can properly assess his current situation of his medical condition(s) due to covid-19 lockdown and approval from medical Burncrosy or Administrative Management.

12.

Release Plan.

In the event the defendant is granted relief, he reserves his opportunity to provide a detailed Release Plan when called upon to do so.

Felony Assessment by Court.

The defendant will satisfy his financial obligation for the $1100.00 American Dollars assessed and ordered by the court at sentencing in between the filings of these documents and course of action.

WHEREFORE, the defendant prays that this Honorable court grants his motion, as well as appoint an attorney to further communicate with the court and any relief deemed necessary and Just.

Wayne Norris
Defendant (Pro-se).

Dated:
2-10-21

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:20-CR-00228 |
| V. | |
| WAYNE NORRIS<br>Defendant | Benita Y. Pearson<br>JUDGE |

## CERTICATE

I, the undersigned, do certify that I have served a copy to the best of my belief to the clerk of the court addressed below by placing in the fci-beckley mail bag at P.O. Box 350, Beaver, WV 25813 on _____ Postage paid, my Motion For Reduction In Sentence which is hereby served upon you.

Respectfully Submitted,

Wayne Norris
Defendant (Pro-Se).

TO: Clerk of the court
125 Market Street
Youngstown, Ohio
44503