IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:20CR228 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | |
| | ) | |
| WAYNE NORRIS, | ) | GOVERNMENT'S RESONSE IN |
| | ) | OPPOSITION TO DEFENDANT'S |
| Defendant. | ) | MOTION TO REDUCE SENTENCE |
| | ) | UNDER 18 U.S.C. § 3582(c)(1)(A)(i) |

The United States of America, by and through undersigned counsel, respectfully submits the following Response in Opposition to Defendant's Motion to Reduce Sentence Under 18 U.S.C. 3582(c)(1)(A)(i). The Court should deny Defendant's motion because his medical conditions are not extraordinary and compelling reasons for his early release.

**I.   BACKGROUND**

    A.   PROCEDURAL HISTORY

On March 12, 2020, the Defendant was charged via criminal complaint with one count of Possession of Cocaine with the Intent to Distribute, 21 U.S.C. § 841(a)(1) and (b)(1)(B). (R. 1: Complaint). On March 10, 2020, United States Postal Inspectors interdicted a package mailed from California destined for 1xx E. Lake Ct., LaGrange, Ohio. The package contained one kilogram of cocaine secreted inside a Tupperware container with coffee grounds. The following day, Postal Inspectors completed a controlled delivery of said cocaine. During the controlled delivery, the Defendant acquired the package, which had been left on the porch by Postal Inspectors. He was arrested shortly thereafter without incident.

On March 19, 2020, a federal grand jury charged the Defendant with one count of Possession of Cocaine with the Intent to Distribute, 21 U.S.C. § 841(a)(1) and (b)(1)(B). (R. 2:

Indictment).  On August 18, 2020, the Defendant entered a plea of guilty to the Indictment and proceeded directly to sentencing on the same day due to COVID-19.  (R. 35: Order).  The Court sentenced the Defendant to a total of 51 months of incarceration followed by 8 years of supervised release.  (R. 43: Judgment).  The instant conviction is the Defendant's fifth felony drug trafficking conviction.  His history includes a 2016 first degree felony Ohio drug trafficking conviction for which he was on parole at the time of the instant offense.

In his Motion, the Defendant argues that he is "gravely concerned about the impact the spread of the COVID-19 is having in the Northeast Ohio Correctional Center Penitentiary" and should also be released due to his asthma and hypertension.  (R. 1468: Motion).  The Defendant asks the Court to reduce his sentence or place him on home confinement to live with his mother (in an unspecified location).  (*Id.*)

      B.      BOP'S RESPONSE TO THE COVID-19 PANDEMIC

As this Court is well aware, COVID-19 is an extremely dangerous illness that has caused many deaths in the United States in a short period of time and that has resulted in massive disruption to our society and economy. In response to the pandemic, BOP has taken significant measures to protect the health of the inmates in its charge.

BOP has explained that "maintaining safety and security of [BOP] institutions is [BOP's] highest priority." BOP, Updates to BOP COVID-19 Action Plan: Inmate Movement (Mar. 19, 2020), available at https://www.bop.gov/resources/news/20200319_covid19_update.jsp.

Indeed, BOP has had a Pandemic Influenza Plan in place since 2012.  BOP Health Services Division, Pandemic Influenza Plan-Module 1: Surveillance and Infection Control (Oct. 2012), available at https://www.bop.gov/resources/pdfs/pan_flu_module_1.pdf. That protocol is lengthy and detailed, establishing a multi-phase framework requiring BOP facilities to begin preparations when there is first a "[s]uspected human outbreak overseas." *Id*. at i.  The plan

2

addresses social distancing, hygienic and cleaning protocols, and the quarantining and treatment of symptomatic inmates.

Consistent with that plan, BOP began planning for potential coronavirus transmissions in January. At that time, the agency established a working group to develop policies in consultation with subject matter experts in the Centers for Disease Control, including by reviewing guidance from the World Health Organization.

On March 13, 2020, BOP began to modify its operations, in accordance with its Coronavirus (COVID-19) Action Plan ("Action Plan"), to minimize the risk of COVID-19 transmission into and inside its facilities, including screenings for new admissions, wearing of protective equipment, and limiting the entrance of contractors, and limiting visitation.  Further details and updates of BOP's modified operations are available to the public on the BOP website at a regularly updated resource page: www.bop.gov/coronavirus/index.jsp.

In addition, in an effort to relieve the strain on BOP facilities and assist inmates who are most vulnerable to the disease and pose the least threat to the community, BOP is exercising greater authority to designate inmates for home confinement. On March 26, 2020, the Attorney General directed the Director of the Bureau of Prisons, upon considering the totality of the circumstances concerning each inmate, to prioritize the use of statutory authority to place prisoners in home confinement. That authority includes the ability to place an inmate in home confinement during the last six months or 10% of a sentence, whichever is shorter, *see* 18 U.S.C. § 3624(c)(2), and to move to home confinement those elderly and terminally ill inmates specified in 34 U.S.C. § 60541(g). Congress has also acted to enhance BOP's flexibility to respond to the pandemic. Under the Coronavirus Aid, Relief, and Economic Security Act, enacted on March 27, 2020, BOP may "lengthen the maximum amount of time for which the Director is authorized to

place a prisoner in home confinement" if the Attorney General finds that emergency conditions will materially affect the functioning of BOP. Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (to be codified at 18 U.S.C. § 3621 note). On April 3, 2020, the Attorney General gave the Director of BOP the authority to exercise this discretion, beginning at the facilities that thus far have seen the greatest incidence of coronavirus transmission.

More recently, in December 2020, the BOP began administering vaccines to inmates. BOP recently reported on its vaccination efforts.[1] BOP reported as follows: "As of January 15, 2021, the BOP administered 17,189 doses of the vaccine. One dose has been administered to 7,576 staff and 5,457 inmates. A completed series of two doses have been administered to 1,027 staff and 1,051 inmates." These efforts set BOP apart from broader society. "According to data available from the CDC on January 15, 2021, the BOP leads all jurisdictions and Federal entities in its rate of vaccination utilization, having administered 97 percent of all COVID-19 vaccine doses received."

Taken together, all of these measures are designed to mitigate sharply the risks of transmission of the novel coronavirus and of COVID-19 symptoms in a BOP institution. BOP has pledged to continue monitoring the pandemic and to adjust its practices as necessary to maintain the safety of prison staff and inmates while also fulfilling its mandate of incarcerating all persons sentenced or detained based on judicial orders.

Unfortunately and inevitably, some inmates have become ill, and more likely will in the weeks ahead. But BOP must consider its concern for the health of its inmates and staff alongside other critical considerations. For example, notwithstanding the current pandemic crisis, BOP

---

[1] *See* BOP, COVID-19 Vaccination Efforts Commended, *available at* https://www.bop.gov/resources/news/20210116_covid_vaccine_efforts_commended.jsp.

must carry out its charge to incarcerate sentenced criminals to protect the public. It must consider the effect of a mass release on the safety and health of both the inmate population and the citizenry. It must marshal its resources to care for inmates in the most efficient and beneficial manner possible. It must assess release plans, which are essential to ensure that a defendant has a safe place to live and access to health care in these difficult times. And it must consider myriad other factors, including the availability of both transportation for inmates (at a time that interstate transportation services often used by released inmates are providing reduced service) and supervision of inmates once released (at a time in which Probation staff have necessarily cut back on home visits and other forms of supervision).

According to the public data on the BOP website as of January 26, 2021,[2] the BOP has placed 19,021 inmates on home confinement under this authority (up from 4,617 as of July 1, 2020). By contrast, there are 3,171 federal inmates who have confirmed positive tests for the coronavirus (down from 6,043 in mid-December), and many more have recovered. For reference, there are 123,273 inmates currently incarcerated and 13,780 in community-based facilities—reflecting an overall reduction in the prison population over the pandemic. According to this data, 206 federal inmates have died for reasons attributed to COVID-19, four of which occurred while the inmate was on home confinement.

By contrast, Cuyahoga County is hardly risk free. As of February 25, 2021, there have been 94,594 residents of Cuyahoga County diagnosed with the disease, and 1,709 people have died, with recent months seeing a particular spike in cases.[3] While the government is

---

[2] Updated figures may be found at https://www.bop.gov/coronavirus/index.jsp.
[3] *See* Ohio Dep't of Health, COVID-19 Dashboard, *available at* https://coronavirus.ohio.gov/wps/portal/gov/covid-19/dashboards/overview.

understanding of the difficulties presented by COVID-19, it is not grounds for the Defendant's release.

## II. LEGAL STANDARD.

A district court generally lacks authority to "modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). The compassionate-release statute, 18 U.S.C. § 3582(c)(1)(A), provides a limited exception to that general rule of finality in federal sentencing. It authorizes a district court to reduce a defendant's previously imposed term of imprisonment if the court determines either that "extraordinary and compelling reasons warrant such a reduction," or that the defendant is at least 70 years of age, has served at least 30 years in prison, and is not a danger to the community. 18 U.S.C. § 3582(c)(1)(A)(i) and (ii). The statute also requires the district court to ensure that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission," and further requires the district court to "consider[] all relevant sentencing factors listed in 18 U.S.C. § 3553(a)" to assess whether a requested sentence reduction is warranted. 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Elias*, No. 20-3654, 2021 WL 50169, at *4 (6th Cir. Jan. 6, 2021); *United States v. Jones*, 980 F.3d 1098, 1101 (6th Cir. 2020).

If a district court determines that each of these requirements are met, it "'may reduce the term of imprisonment,' but need not do so." *Elias*, 2021 WL 50169, at *3. Conversely, if the defendant fails to satisfy any one of these criteria, the court may not grant compassionate release. *Id.* at *4 (citing *United States v. Ruffin*, 978 F.3d 1000, 1004-05 (6th Cir. 2020)) ("Of course, in granting a compassionate-release motion, district courts must address all three steps."); *see also, generally*, *United States v. Rodd*, 966 F.3d 740, 744-45 (8th Cir. 2020). Further, "district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." *Elias*, 2021 WL 50169, at *4

(citing *Jones*, 980 F.3d at 1108; *Ruffin*, 978 F.3d at 1006). As the movant, the inmate-defendant bears the burden to establish that he is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

In the Sentencing Reform Act of 1984, Congress directed the Sentencing Commission to promulgate policy statements concerning compassionate release. 28 U.S.C. § 994(a)(2)(C). It further specified that those policy statements "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples," and that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t).

Before 2018, the compassionate-release statute authorized a district court to act only "upon motion of the Director of the [BOP]." 18 U.S.C. § 3582(c)(1)(A) (2012). In the First Step Act (enacted in December 2018), however, Congress amended § 3582(c)(1)(A) to permit district courts to act "upon motion of the defendant" in certain circumstances, thus removing BOP as the exclusive gatekeeper. Pub. L. No. 115-391, § 603(b)(1), 132 Stat. 5339. Although Congress modified the procedure for filing such motions, it did not modify the substantive criteria for granting relief. *Ruffin*, 978 F.3d at 1004. In particular, it preserved the preexisting requirement that any sentence reduction be "consistent with applicable policy statements" from the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A).

The Commission issued the initial version of that policy statement in 2006, in U.S.S.G. § 1B1.13. *See* U.S.S.G. App. C. Amend. 683 (Nov. 1, 2006). It restated the statutory criteria for compassionate release and added a requirement that the district court must find, before granting a reduction, that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 314/2(g)." U.S.S.G. § 1B1.13(2).

7

Shortly thereafter, to discharge its Congressional mandate to specify "what should be considered extraordinary and compelling reasons for sentence reduction," 28 U.S.C. § 994(t), the Commission promulgated Application Note 1 as commentary to U.S.S.G. § 1B1.13. *See* U.S.S.G. App. C. Amend. 698 (Nov. 1, 2007). There, it defined "extraordinary and compelling reasons." In its most recent iteration, those comprise only four sets of circumstances. The first permits relief for serious medical conditions. More particularly, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). That standard is also met if the defendant is:

> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,

> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, cmt. n.1(A)(ii).

The Application Note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(B)-(C). Those were not at issue in this case. Finally, the Application Note recognizes the possibility that the BOP could identify "other reasons" that would constitute "extraordinary and compelling reasons," and thus request compassionate release. U.S.S.G. § 1B1.13, cmt. n.1(D).[4]

---

[4] BOP has issued a regulation defining its own consideration of requests for compassionate release. That

The Commission's policy statement was last amended in November 2018, before the enactment of the First Step Act. In two respects the policy statement and its commentary continue to reflect the pre-First Step Act version of § 3582(c)(1)(A). First, in restating the statutory criteria for eligibility for compassionate release, the policy statement refers to a court acting "[u]pon motion of the Director of the [BOP]," without also mentioning that a defendant may now file a compassionate-release motion. U.S.S.G. § 1B1.13. Second, Application Note 4, which is entitled "Motion by the Director of the Bureau of Prisons," states that "[a] reduction under this policy statement may be granted only upon motion by the Director of the [BOP]." U.S.S.G. § 1B1.13 cmt. n.4.

Although the government believes, notwithstanding the First Step Act amendments, that the Commission's policy statement set forth in U.S.S.G. § 1B1.13 should be deemed "applicable" based on principles of statutory construction and logic,[5] regardless of whether the

---

regulation appears at Program Statement 5050.50, *available at* https://www.bop.gov/policy/progstat/5050_050_EN.pdf, and was amended effective January 17, 2019, following passage of the First Step Act. It replaces the previous program statement, 5050.49, CN-1.

[5] "Applicable" means "capable of being applied" or "affecting or relating to a particular . . . situation." Black's Law Dictionary (11th ed. 2019). Despite the initial, prefatory "Upon motion of the Director of the Bureau of Prisons" language—written at a time when Congress had authorized only the BOP to file such motions—all substantive provisions of Section 1B1.13 and its commentary remain "capable of being applied," and "affect or relate" to inmate-filed compassionate-release motions. No substantive provisions conflict with the First Step Act, which did not expand the grounds for compassionate release beyond the categories the Commission identified in U.S.S.G. §1B1.13 Application Note 1 nor add any substantive criteria distinctions based on who filed the motion. Instead, the First Step Act only modified the procedure for filing. U.S.S.G. § 1B1.13's substantive requirements may—and should—apply equally, regardless of the motion's filer. *See, e.g.*, *United States v. Bell*, 823 F. App'x 283, 284 (5th Cir. 2020) (per curiam) (treating § 1B1.13 as applicable to defendant-filed motions; *United States v. Saldana*, 807 F. App'x 816, 819-20 (10th Cir. 2020) (same); *United States v. Doe*, 2020 WL 6328203, at *1 (3d Cir. Oct. 29, 2020) (per curiam) (same). *See also* U.S.S.G. App. C. Amend. 799 (Nov. 1, 2016) (amending title to U.S.S.G. § 1B1.13 to "Reduction In Term of Imprisonment Under 18 U.SC. 3582(c)(1)(A) (Policy Statement) by striking the portion that stated "as a Result of Motion by Director of Bureau of Prison," and inserting instead "Under 18 U.S.C. § 3582(c)(1)(A)."); *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 139 S. Ct. 1881, 1890 (2019) (Congress legislates against the "backdrop of existing law").

Bureau of Prisons ("BOP") or an inmate files the compassionate-release motion, the government acknowledges that the Sixth Circuit and others have concluded otherwise. *See, e.g.*, *Elias*, No. 20-3654, 2021 WL 50169, at *3; *Jones*, 980 F.3d at 1108-11; *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). Thus, as presently written, U.S.S.G. § 1B1.13 is not a policy statement "applicable" to inmate-filed motions, and it does not bind district courts in that context. *Elias*, No. 20-3654, 2021 WL 50169, at *4; *Jones*, 980 F.3d at 1108-11.

That said, Section 1B1.13 remains a relevant guidepost for the courts to consider. District courts still must "define 'extraordinary and compelling' on their own initiative," *Elias*, No. 20-3654, 2021 WL 50169, at *4, and courts should consider the Sentencing Commission's views on how best to define that phrase. Indeed, as the Seventh Circuit stated regarding this issue, § 1B1.13 offers a "working definition" of "extraordinary and compelling reasons" that "can guide discretion without being conclusive." *Gunn*, 980 F.3d at 1180.

Moreover, the words of the statute, "extraordinary and compelling," have independent significance, the "statute's plain text" being the starting place in its construction in the compassionate release context, as in others. *See United States v. Keefer*, 832 F. App'x 359, 362 (6th Cir. 2020) (looking to § 3582's text in determining nature of district court's inquiry). District courts may only grant motions where the reasons provided are "extraordinary" and "compelling" ones. 18 U.S.C. § 3582(c)(1)(A). And considering a defendant's danger to the

---

Moreover, the Commission drafted the "extraordinary and compelling reasons" definition in Application Note 1 in filer-neutral terms; it does not refer to BOP-filed motions. Application Note 1 specifically implemented Congress's directive in 28 U.S.C. § 994(t) to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." Thus, at a minimum, Application Note 1 should remain binding. The government preserves these arguments for further review.

10

community if released, of course, falls squarely within "the [applicable] factors set forth in section 3553(a)." *Id.*

### III. ARGUMENT

#### A. DEFENDANT HAS MET THE EXHAUSTION REQUIREMENT.

Before moving this Court for compassionate release, a defendant must first present his case for compassionate release to the warden at his BOP institution and wait until either (1) the warden has denied his request, or (2) more than 30 days have elapsed without a decision. *See United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). On review, the government agrees that he exhausted his administrative remedies for this motion.

#### B. DEFENDANT HAS NOT MET HIS BURDEN OF ESTABLISHING EXTRAORDINARY AND COMPELLING REASONS.

In his Motion, the Defendant argues that he suffers from Grave's disease, smokes, and is obese and therefore established extraordinary and compelling reasons for his release. The Defendant also painstakingly outlines the conditions at FCI-Beckley, where he is currently incarcerated. The COVID-19 pandemic, while a once-in-a-century occurrence, is not in and of itself "extraordinary" in the sense that the statute requires. It poses a risk to all persons in our society, whether incarcerated or not. As the Sixth Circuit has stressed, "generalized fears of contracting COVID-19, without more," do not justify or permit the release of criminal defendants. *United States v. Bothra*, No. 20-1364, 2020 WL 2611545, at *2 (6th Cir. May 21, 2020); *accord United States v. McGowan*, No. 20-1617, 2020 WL 3867515, at *2 (6th Cir. July 8, 2020); *Wilson v. Williams*, 961 F.3d 829, 844-45 (6th Cir. 2020); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify

11

compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

The Centers for Disease Control and Prevention ("CDC") has identified two categories of medical risk factors affecting the likelihood of severe outcomes from COVID-19.[6] The first category includes medical conditions that *definitely* entail a greater risk of severe illness. The second category identified by the CDC includes medical conditions that *might* place people at an increased risk of severe illness from COVID-19.

In his motion, the Defendant cites three medical conditions. Two of those conditions – obesity and smoking – fall into the first category and his third condition – Grave's disease – falls into the second category.

While he is at a higher risk than any some other inmates, he is far from establishing any COVID-19-related circumstances that are extraordinary and compelling, as opposed to commonplace. Nor are his proffered medical conditions on their own grounds for a finding of extraordinary and compelling reasons. Taking each condition in turn:

*Obesity:*  In his Motion, the Defendant states that he is obese. (R. 45: Motion). This is not grounds for his compassionate release. In his medical records, it indicates that the Defendant is 6'3" and weighs 250 pounds, which equates to a body mass index of 32.9. The Defendant is only 34 years of age. Further, while the government understands that obesity can constitute a qualifying reason, the district court is free, in its discretion, to disagree and conclude otherwise. Indeed, other courts have reached similar conclusions. *See United States v. Wilfred*, No. CR 07-

---

[6]  *See* Centers for Disease Control and Prevention, Coronavirus Disease 2019, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

351, 2020 WL 4365531, at *5 (E.D. La. July 30, 2020) (denying compassionate release even though obesity is an "underlying medical condition" that poses "increased risk for severe illness from COVID-19," obesity—alone or paired with hypertension—does not provide adequate grounds or compassionate release.); *United States v. Gordon*, No. 15-20609, 2020 WL 3971013, at *3 (E.D. Mich. July 14, 2020) (denying compassionate release of an obese defendant, reasoning that because "42.4% of American adults are obese and [an] additional 32% are overweight," obesity "is not a condition so [extraordinary] that injustice would result if the relief is not granted"); *United States v. Whiteman,* No. 15-00298, 2020 WL 4284619, at *1 (E.D. Pa. July 27, 2020) (denying compassionate release of a defendant whose "only active health problems are obesity and high blood pressure"); *United States v. Takewell*, No. 14-00036, 2020 WL 4043060, at *3 (W.D. La. July 17, 2020) (denying compassionate release upon finding that the defendant's "general complaint[s] [of] obesity and hypertension are not consistent with extraordinary or compelling circumstances as provided by the policy statement and its commentary").

*Smoker:* The Defendant also cites in his motion that he is a smoker and therefore entitled to compassionate release. (R. 45: Motion). The Defendant's medical record indicate a history of tobacco use, but do not cite any reason to believe that his history of smoking has impacted his health. Also, the CDC recommends, in their "actions to take" regarding COVID-19, "If you currently smoke, quit. If you used to smoke, don't start again. If you've never smoked, don't start." Therefore, the Defendant is less likely to exacerbate this condition while incarcerated as he does not legally have access to tobacco products.

And, in any event, courts have concluded that the mere assertion that a defendant is a former smoker is insufficient to merit release. *Musa v. United States*, No. 19-CV-9130, 2020 WL

13

6873506, at *8 (S.D.N.Y. Nov. 23, 2020); *See, e.g.*, *United States v. Elliott*, No. 17-cr-128, 2020 WL 4381810, at *4 (E.D.N.Y. July 31, 2020); *United States v. Leigh-James*, No. 3:15-cr-188 (SRU), 2020 WL 4003566, at *7 (D. Conn. July 15, 2020) ("To the extent [defendant] suggests that his history as a smoker puts him at special risk, there is nothing in the record to suggest that his history of smoking (if he has one) has impacted his health."); *United States v. Marsh*, No. 2:14-cr-83, 2020 WL 3989580, at *2 (D. Vt. July 15, 2020) (finding no extraordinary or compelling reasons for compassionate release when defendant was not elderly and, despite his smoking history, made no allegation of related disease); *United States v. Anguiera*, No. 11-CR-116S (1), 2020 WL 3424530, at *6 (W.D.N.Y. June 23, 2020) (concluding that, absent any objective evidence of a history of heavy smoking, defendant failed to establish increased risk from COVID-19 based on history of smoking.

*Grave's Disease:* The Defendant also cites his Grave's disease as grounds for his compassionate release. (R. 45: Motion). The Defendant, according to his own records, is prescribed medication to manage the disease and provides no record of problems while incarcerated. Grave's disease is an autoimmune disease, which causes an overactive thyroid, which in turn makes more thyroid hormones than your body needs. However, Grave's disease is extremely common and affects about 1 in 200 people.[7] This is not grounds for his compassionate release.

Regardless, the Section 3553(a) factors weigh against the court exercising its discretion to grant Defendant an early release. Defendant's motion should also be denied based on its

---

[7] Genetics Home Reference. National Library of Medicine. National Institutes of Health. Published August 2017; last reviewed July 2013. https://ghr.nlm.nih.gov/condition/graves-disease#statistics Accessed March 1, 2021.

14

assessment of the applicable Section 3553(a) factors. Assessing Defendant's dangerousness is a factor incorporated in Section 3553(a) which must be "consider[ed]" before release for extraordinary and compelling reasons may be allowed. *United States v. Douglas*, Case No. 16-20436, 2020 U.S. Dist. LEXIS 230064 *10-11 (E.D. Mich. Dec. 7, 2020) citing 18 U.S.C. § 3553(a)(2)(C) (requiring a sentencing court to consider "the need . . . to protect the public from further crimes of the defendant"). Any sentencing reduction must also account for "the seriousness of the offense," the need "to promote respect for the law," and "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A), (C).

In particular, in assessing dangerousness, 18 U.S.C. § 3142(g) counsels courts to consider: (1) "the nature and circumstances of the offense . . . , including whether the offense . . . involves . . . a firearm; (2) "the weight of evidence against the person"; (3) "the history and characteristics of the person, including . . . (A) the person's . . . past conduct . . . [and] criminal history"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *United States v. Stuyvesant*, 454 F. Supp. 3d 1236, 1243 (S.D. Fla. 2020).

Each of these factors weigh heavily against Defendant. This is the Defendant's fifth lifetime conviction for trafficking in controlled substances. He continues to be arrested, prosecuted, and sentenced and yet, he continues to commit drug crimes over and over. In short, the Defendant has spent his life committing criminal offenses and is unbothered by the confines of court supervision. It is clear that the Defendant is disinterested in becoming a productive member of society. He has, time after time, defied the cultural norms of society, pushed the limit of the safety of others in the Northern District of Ohio and surrounding areas, and lived a life unafraid of consequence. The Defendant's lifetime of poor, selfish, and dangerous decisions

15

have brought him to this moment.  It is implausible to think that the Defendant, at his age with his deep immersion in a lifestyle of criminal activity, can be rehabilitated.  Therefore, if released, the Defendant still poses a danger to the Northeast Ohio community.

The government notes that the Court can alternatively hold that Defendant has failed to make the threshold showing of "extraordinary and compelling reasons" and that, even if such a showing had been made, that release would not be granted in the Court's exercise of its discretion.  The government submits that such a holding is favored under the law and would resolve any uncertainty.  *See, e.g.*, *Elias*, No. 20-3654, 2021 WL 50169, at *3 (defendant must establish that relief is warranted under all three statutory criteria; even if a district court determines that each requirement is met, it "need not" grant the motion seeking compassionate release).  However, the Court is free to limit its analysis to just one of the statutory requirements if it is lacking.  *See Elias*, 2021 WL 50169, at *4 (citing *Jones* and *Ruffin*) ("district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others"); *Jones*, 980 F.3d at 1108 (affirming denial of compassionate release based upon the district court's Section 3553(a) factor-only analysis); *Ruffin*, 978 F.3d at 1006 ("we may affirm the denial of [compassionate release] based on the third discretionary rationale alone").

16

## IV. **CONCLUSION**

For the foregoing reasons, the United States asks that this Court deny Defendant's Motion to Reduce Sentence Under 18 U.S.C. § 3582(c)(1)(A)(i).

Respectfully submitted,

BRIDGET M. BRENNAN
Acting United States Attorney

By: /s/ Kevin P. Pierce
Kevin P. Pierce (PA: 312492)
Assistant United States Attorney
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3758
(216) 522-7499 (facsimile)
Kevin.Pierce@usdoj.gov