PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NO. 1:20CR0228 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| WAYNE NORRIS, | ) | |
| | ) | **ORDER** |
| Defendant. | ) | [Resolving ECF Nos. 45 and 51] |

Pending are Defendant Wayne Norris's Motion for Reduction in Sentence (ECF No. 45), filed *pro se*, and Supplemental Motion Under 18 U.S.C § 3582(c)(1)(A)(i) for Compassionate Release (ECF No. 51),[1] filed by appointed counsel.[2] The Government has filed a response in opposition (ECF No. 46) and supplemental responses (ECF Nos. 55[3] and 58[4]). Defendant filed a

---

[1] A redacted motion was filed in the public record (ECF No. 50). In compliance with a prior Order (ECF No. 49) and Electronic Filing Policies and Procedures Manual (Feb. 10, 2020) at §§ 19 and 24, Defense counsel filed an unredacted version of the document under seal (ECF No. 51).

[2] The Court appointed the Federal Public Defender for Defendant pursuant to Amended General Order No. 2020-07-2. *See* Non-document Order, dated March 2, 2021.

[3] A redacted supplemental response was filed in the public record (ECF No. 54). In compliance with a prior Order (ECF No. 53) and Electronic Filing Policies and Procedures Manual (Feb. 10, 2020) at §§ 19 and 24, the Government filed an unredacted version of the document under seal (ECF No. 55).

[4] In compliance with a prior Order (ECF No. 57) and Electronic Filing Policies and Procedures Manual (Feb. 10, 2020) at §§ 19 and 24, the Government filed an unredacted version of the document under seal (ECF No. 58).

(1:20CR0228)

Notice (ECF No. 56) that he would not be filing a response to the Government's Supplemental Response (ECF No. 55). For the reasons that follow, Defendant's motions are denied.

### I. Background

In 2020, pursuant to a written Plea Agreement (ECF No. 42), Defendant pleaded guilty to Possession of a Controlled Substance With the Intent to Distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). *See* Minutes of proceedings [non-document], dated August 18, 2020. The Court sentenced Norris to 51 months of imprisonment. The Court also imposed a term of eight years of supervised release. *See* Minutes of proceedings [non-document] dated August 18, 2020; Judgment in a Criminal Case (ECF No. 43). Defendant did not appeal to the United States Court of Appeals for the Sixth Circuit.

Defendant is currently serving his prison sentence at FCI Beckley ("Beckley").[5] Norris avers that due to the COVID-19 pandemic[6] and the risk of infection at Beckley, the Court should reduce his sentence to time served and place him on supervised release, with the condition he be placed on home confinement through the remainder of his custodial term. Defendant also asserts

---

[5] *See* http://www.bop.gov/inmateloc/ (last visited May 11, 2022). Beckley is a medium security federal correctional institution with an adjacent minimum security satellite camp. Defendant's anticipated release date is March 29, 2023. Beckley currently houses 1,621 total inmates (1,557 at the FCI and 64 at the Camp). *See* https://www.bop.gov/locations/institutions/bec (last visited May 11, 2022). As of May 10, 2022, there are no confirmed active cases of COVID-19 at Beckley. No inmates or staff have died and 192 inmates and 142 staff at Beckley have recovered from COVID-19. *See* https://www.bop.gov/coronavirus/ (last visited May 11, 2022).

[6] If he has not already done so, Defendant is encouraged to accept the COVID-19 vaccine.

(1:20CR0228)

his family needs his help due to the unexpected death of his sister[7] and his grandmother has been diagnosed with cancer. *See* Letter from Hospice Social Worker (ECF No. 51-1).[8] Defendant has set forth a release plan indicating a place to live and people to support him. *See* Letter from Desiree Hoinowski (ECF No. 51-3).

## II. Legal Standard for Seeking Compassionate Release

Under 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), a court may reduce a defendant's sentence upon motion of the Director of the Bureau of Prisons ("BOP") or the defendant. The Sixth Circuit has provided that district courts must follow a "three-step test" for determining whether to grant a defendant's motion for compassionate release. *United States v. Jones*, 980 F.3d 1098 (6th Cir. 2020).

> At step one, a court must "find[]" whether "extraordinary and compelling reasons warrant" a sentence reduction. At step two, a court must "find[]" whether "such a reduction is consistent with *applicable* policy statements issued by the Sentencing Commission." The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13. Thus, if § 1B1.13 is still "applicable," courts must "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized. At step three, "§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction

---

[7] According to Defendant, he and his family experienced "a terrible loss of a young four (4) year old [niece]." ECF No. 45 at PageID #: 293. Appointed counsel, however, states "Mr. Norris's family needs his help with the recent and unexpected death of his sister." ECF No. 51 at PageID #: 333.

[8] Defendant maintains that in October 2020 he was assaulted by other inmates while he was incarcerated at a prison operated by Core Civic America ("CCA"). *See* Defendant's Statement (ECF No. 51-2). There is no evidence, however, to corroborate Norris's claim the assault actually took place. Norris admittedly did not report the incident to prison staff, the police or to another inmate in confidence. In addition, appointed counsel has not supplemented the record with documents from the BOP regarding any mental health requests made by Defendant.

(1:20CR0228)

>authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case."

Id. at 1107-08 (alterations and emphasis in original) (citations omitted).

The conditional statement regarding the applicability of U.S.S.G. § 1B1.13 foreshadows another holding from *Jones*: § 1B1.13 is *not* applicable to compassionate release motions filed by defendants. Id. at 1109. Therefore, because there is no applicable guidance for district courts to follow at step two, "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." Id. In other words, once a court establishes that extraordinary and compelling factors are present (step one), it should skip step two – at least until the Sentencing Commission updates § 1B1.13 – and proceed to step three, *i.e.*, the consideration of the § 3553(a) factors.

A defendant is eligible to seek compassionate release from a court after he has exhausted all administrative rights to appeal the BOP's failure to bring a motion on his behalf *or* thirty days have elapsed since requesting that the warden of his facility initiate such action. 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020) ("Prisoners who seek compassionate release have the option to take their claim to federal court within 30 days, no matter the appeals available to them.").

(1:20CR0228)

### III. Discussion

### A.

Defendant has properly exhausted his administrative remedies. In December 2020, he sent a request to the Warden of his institution seeking a reduction in sentence based on concerns about COVID-19. The warden denied his request. *See* ECF No. 45-3. The Government also concedes that Norris has satisfied the exhaustion requirement under 18 U.S.C. § 3582(c)(1)(A). *See* ECF No. 46 at PageID #: 314; *Alam*, 960 F.3d at 833 (6th Cir. 2020) ("They must 'fully exhaust[ ] all administrative rights' or else they must wait for 30 days after the warden's 'receipt of [their] request.' ").

### B.

### 1.

Norris is a 35-year-old man that suffers from Graves' disease and obesity, and is a former smoker. The parties document Defendant's medical conditions with institutional records. *See* BOP Health Services Records (ECF Nos. 45-1, 45-2, and 58-1). Defendant argues his Graves' disease creates a risk factor for severe illness or complications, if he contracts COVID-19. The Centers for Disease Control and Prevention ("CDC") does not specify that Graves' disease or any other thyroid issues place a person at heightened risk of severe illness from COVID-19. *See* People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited May 11, 2022); https://www.thyroid.org/covid-19/coronavirus-frequently-asked-questions/#hypothyroidism (last visited May 11, 2022) ("Thus far, there is no indication that patients with autoimmune thyroid

(1:20CR0228)

disease are at greater risk of getting COVID-19 or of being more severely affected should they acquire the COVID-19 infection."). A diagnosis of Graves' disease alone does not create an extraordinary or compelling reason for compassionate release. *United States v. Humphrey*, No. 2:15-cr-20329-4, 2021 WL 1422765, at *2 (E.D. Mich. April 15, 2021).

The medical records in this case indicate that on November 19, 2020, Norris was 6'3" tall, weighed 250 pounds, and had a Body Mass Index ("BMI") of 31.2.[9] *See* ECF No. 45-1 at PageID #: 297. According to the CDC, having obesity, defined as a BMI greater than or equal to 30 kg/m$^2$ or higher, but under 40 kg/m$^2$ "can make you more likely to get very sick from COVID-19." CDC, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited May 11, 2022). In 2015, the Bureau of Justice Statistics reported, however, that in 2011-2012, 74% of state and federal prisoners and 62% of local jail inmates were overweight, obese, or morbidly obese. *Medical Problems of State and Federal Prisoners and Jail Inmates, 2011-12*, U.S. Dep't of Justice (Oct. 4, 2016). Granting compassionate release based on obesity alone would warrant widespread compassionate release, which would undermine the limited scope of compassionate release. *See United States v. Biggs*, 858 Fed.Appx. 916 (Mem) (6th Cir. 2021) (36-year-old defendant's obesity alone, without evidence of ill effects, did not pose a high enough risk of COVID-19 complications); *Humphrey*, 2021 WL 1422765, at *2 (Defendant's BMI in the obese range did not warrant compassionate release); *United States v. Bell*, No. 1:18-cr-00246-2, slip. op. at 3 (N.D. Ohio Oct. 19, 2020) (Pearson, J.).

---

[9] *See* CDC, Adult BMI Calculator https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited May 11, 2022).

(1:20CR0228)

Defendant also relies on his previous history of smoking. The CDC has reported that "[b]eing a current or former cigarette smoker can make you more likely to get very sick from COVID-19." *See* CDC, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited May 11, 2022). The December 16, 2020 BOP Health Services Record refers to Defendant's history of smoking, but does not specify how many packs a day or for how many years. *See* ECF No. 45-1. The medical records, however, contain no report of any adverse physical symptoms which Defendant is currently experiencing or has experienced in the past due to his smoking. There also is no evidence that Defendant has smoked since being confined in a federal correctional institution in 2020. In 2015, the BOP banned smoking in all federal correctional facilities unless it is part of an inmate's approved religious activity. *See* 28 C.F.R. § 551.163. In *United States v. Tranter*, 471 F. Supp.3d 861, 865 (N.D. Ind. 2020), the court rejected defendant's argument that his status as a former smoker placed him at increased risk, noting that defendant had identified no adverse health effects resulting from his smoking past and that, according to the CDC, his risk of disease from smoking dropped every day he remained smoke-free.

**2.**

Defendant was offered a Pfizer-BioNTech COVID-19 vaccine in April 2021, but he refused it. *See* ECF No. 58-1 at PageID #: 359. "[A] defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction." *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021) (citing *United States v. Broadfield*, 5 F.4th

(1:20CR0228)

801, 803 (7th Cir. 2021)). "But if an inmate does not present a compelling reason justifying the failure to be vaccinated despite access to the vaccine, a district court would abuse its discretion by granting a motion seeking a sentence reduction . . . on the grounds that COVID-19 constitutes an extraordinary and compelling justification." *Id.*; *see also Broadfield*, 5 F.4th at 803 ("[A] prisoner who remains at elevated risk because he has declined to be vaccinated cannot plausibly characterize that risk as an 'extraordinary and compelling' justification for release."); *United States v. Kennedy*, No. 21-2675, 2022 WL 43187, at *2 (6th Cir. Jan. 5, 2022); *United States v. Fowler*, No. 21-5769, 2022 WL 35591, at *2 (6th Cir. Jan. 4, 2022) (district court did not abuse its discretion when it denied defendant's motion for compassionate release based on his access to the COVID-19 vaccine). "Courts have consistently refused to find extraordinary and compelling medical circumstances when a defendant declines the COVID-19 vaccine." *United States v. French*, No. 3:10-CR-00117-1, 2021 WL 1316706, at *6 (M.D. Tenn. April 8, 2021) (collecting cases); *see also United States v. Baeza-Vargas*, 532 F. Supp.3d 840, 843-44 (D. Ariz. 2021) (collecting cases); *United States v. Warren*, No. 04-cr-354 (NG), 2021 WL 4059437, at *4 (E.D.N.Y. Sept. 7, 2021) (denying compassionate release to prisoner who twice refused offered vaccination). Defendant does not state any medical reason for refusing the vaccine, and he has no known medical contraindication for the vaccine. His refusal is inconsistent with his argument that he is at heightened risk for severe illness.

**3.**

Accordingly, Defendant does not present an extraordinary and compelling reason for release within the meaning of § 3582(c)(1)(A) because he refused vaccination. Moreover, his medical conditions are being effectively treated and managed by the BOP. *See United States v.*

(1:20CR0228)

*Roney*, No. 10-CR-130S, 2020 WL 2846946, at *6 (W.D.N.Y. June 2, 2020) (holding even though the defendant falls firmly in the high-risk group, the mere possibility of contracting COVID-19, without any showing that the BOP will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason). "To be faithful to the statutory language requiring 'extraordinary and compelling reasons,' it is not enough that Defendant suffers from . . . chronic conditions that [he] is not expected to recover from. Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Alvarez*, No. 3:18-cr-158-SI-01, 2020 WL 3047372, at *5 (D. Or. June 8, 2020) (denying a motion for release from a 50-year-old severely obese defendant suffering from Hepatitis C, type 2 diabetes, high blood pressure, high cholesterol, chronic liver disease, and asthma) (quoting *United States v. Ayon-Nunez*, No. 1:16-CR-00130-DAD, 2020 WL 704785, at *2-3 (E.D. Cal. Feb. 12, 2020)).

Defendant alleges nothing more than the general possibility that he could contract COVID-19. *See United States v. Clark*, No. 5:19CR0274-1, slip. op. at 4 (N.D. Ohio May 7, 2020) (Pearson, J.) (finding mere existence of COVID-19 in prison and the possibility that Defendant may be exposed to the virus do not require the prison to "fling open its doors and allow an inmate to end his term of incarceration"). In addition, Defendant has made no showing that Beckley's plan and efforts to combat the disease are inadequate or that the BOP is unable to adequately treat him if he falls ill prior to his anticipated release date in March 2023. Thus, Defendant has not presented "extraordinary and compelling" reasons for release under 18 U.S.C. § 3582(c)(1)(A)(i).

**C.**

(1:20CR0228)

Even assuming that extraordinary and compelling reasons exist, compassionate release is denied based on a balancing of the 18 U.S.C. § 3553(a) sentencing factors. In addition to examining whether extraordinary and compelling reasons warrant a reduction in sentence, courts must consider all pertinent § 3553(a) factors and whether the inmate poses a danger to the community. See *United States v. Ruffin*, 978 F.3d 1000, 1008 (6th Cir. 2020) ("We have repeatedly recognized that district courts may deny relief under the § 3553(a) factors even if 'extraordinary and compelling' reasons would otherwise justify relief."). Indeed, during the COVID-19 pandemic, courts have found that even when an inmate's medical condition creates an extraordinary and compelling reason for compassionate release, release is not mandatory and can be refused after weighing the sentencing factors of § 3553(a). See *United States v. Pegram*, 843 Fed.Appx. 762, 764 (6th Cir. 2021) (holding that district court's weighing of sentencing factors was, standing alone, sufficient basis for denial of compassionate release).

The Court begins with the nature and circumstances of the offense. The instant conviction arose from Defendant's engagement in trafficking of cocaine. The circulation of addictive drugs such as cocaine presents a grave danger to the health and well-being of others in the Northeast Ohio community. The history and characteristics of Defendant also leave no doubt that compassionate release is not appropriate. Defendant's criminal history compounds the seriousness of the conduct at issue in the case at bar. The instant conviction is Defendant's fifth felony drug trafficking conviction. His history includes a 2016 first degree felony Ohio drug trafficking conviction for which he was on parole at the time of the instant offense. His adult criminal history stretches back almost 17 years. In the 2016 conviction, Norris was the undisputed head of a drug trafficking organization that included six other co-conspirators. Four

(1:20CR0228)

firearms were located, one of which was reported stolen. The nature and circumstances of the instant drug trafficking offense and Defendant's history and characteristics lead the Court to conclude that such an early release from his 51-month sentence would not comport with the sentencing factors.

The remaining factors also weigh against granting Defendant's motions. Norris has over 10 months in custody remaining on his imposed sentence. Early release from incarceration imposed for such severe conduct would fail "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." § 3553(a)(2)(A). Releasing Defendant at this time would also fail to afford "adequate deterrence" for a dangerous drug offense. § 3553(a)(2)(B). The Court does, however, commend Defendant for the rehabilitative efforts he has taken during his incarceration. *See, e.g.*, Defendant's participation in the Residential Drug Abuse Program ("RDAP") (ECF No. 43 at PageID #: 272; ECF No. 45 at PageID #: 289; ECF No. 51 at PageID #: 339). But, the amount of time Defendant has served thus far is not sufficient to serve the purposes of sentencing. And, in total, the sentencing factors counsel against granting Norris a compassionate release.

Defendant is a danger to "the safety of any other person and the community," as provided in 18 U.S.C. § 3142(g). The Court concludes his medical conditions do not outweigh the significant risks a reduced sentence would pose. *See United States v. Holder* No. 1:18CR0609, 2020 WL 4570524, at * 3 (N.D. Ohio Aug. 7, 2020) (Pearson, J.) (citing *United States v. Morales*, No. 3:19-CR-00121 (KAD), 2020 WL 2097630, at *3 (D. Conn. May 1, 2020) (concluding the defendant continued to pose a real danger to the community and that the risk of

(1:20CR0228)

this danger outweighed the extraordinary and compelling reason for release created by his medical condition).

Having carefully considered the entire record and weighed the pertinent sentencing factors as required, the Court concludes that the § 3553(a) factors weigh against compassionate release and sentence modification.

### IV. Conclusion

Defendant's Motion for Reduction in Sentence (ECF No. 45) and Supplemental Motion Under 18 U.S.C § 3582(c)(1)(A)(i) for Compassionate Release (ECF No. 51) are denied on the merits.

IT IS SO ORDERED.

| | |
|---|---|
| May 12, 2022 | /s/ Benita Y. Pearson |
| Date | Benita Y. Pearson |
| | United States District Judge |